## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MACKENZIE FORD, | \| | C.A. No.: |
| | \| | |
| *Plaintiff*, | \| | **TRIAL BY JURY DEMANDED** |
| | \| | |
| v. | \| | |
| | \| | |
| DELAWARE HOSPICE, INC. | \| | **COMPLAINT** |
| | \| | |
| *Defendant*. | \| | |

Plaintiff Mackenzie Ford brings this action for damages and demand for a jury trial against Defendant Delaware Hospice, Inc.  In support thereof, Plaintiff states as follows:

### Parties / Jurisdiction / Venue

1.     Plaintiff Mackenzie Ford ("Plaintiff") is a United States citizen who resides at 1130 Peachtree Run, Magnolia, Delaware 19962.

2.     Defendant Delaware Hospice, Inc. ("Defendant" or "Delaware Hospice") is a Delaware corporation whose registered agent for service of process is Delaware Hospice, Inc., 630 Churchmans Road, Suite 200, Newark, Delaware 19702.

3.     Plaintiff brings this action to redress the wrongs done to her by Defendant's discrimination and retaliation against her on the basis of her disability under the Americans with Disabilities Act ("ADA"), Defendant's discrimination and retaliation against her on the basis of her disability under the Delaware Persons with

Disabilities Employment Protections Act ("DPDEPA"), Defendant's interference with her rights under the Family and Medical Leave Act ("FMLA"), Defendant's retaliation against her for her attempt to exercise her rights under the FMLA, and defamation of Defendant's reputation.

4. The Court has original jurisdiction for Defendant's complaints under the ADA, 42 U.S.C. § 12101, *et seq., and the FMLA, 29 U.S.C. §2601, et seq.,* as Defendant is an employer within the State of Delaware and within the jurisdictional coverage of those Acts. Original jurisdiction is conferred on this Court by 28 U.S.C. § 1331, 29 U.S.C. § 2617(a)(2), and 42 U.S.C. § 12117(a).

5. The Court has supplemental jurisdiction of Plaintiff's claims under the Delaware Persons with Disabilities Employment Protections Act ("DPDEPA"), 19 *Del. C.* § 720 *et seq.*, and Plaintiff's claim of defamation pursuant to 28 U.S.C. § 1367, as these claims are so related to Plaintiff's ADA and FMLA claims that they form part of the same case or controversy.

6. Venue for this action lies in the District of Delaware pursuant to 28 U.S.C. § 1391(b), as the acts alleged as the basis for this claim took place within the boundaries of that District.

7. At all times relative to this complaint, Plaintiff had a "disability" as that term is defined by 42 U.S.C. § 12102(1), *i.e.*, Plaintiff had a physical impairment that substantially limited one or more of her major life activities, and/or she had a

record of such impairments, and/or she has been regarded by Defendants as having such impairments. Specifically, Plaintiff was diagnosed with arthritis and a need for frequent restroom breaks due to gall bladder surgery.

8.  Plaintiff advised Defendant that she may need an ADA accommodation, but was terminated directly after making the request.

9.  Defendant failed to engage in an interactive process or in any way consider whether Plaintiff could perform her job with a reasonable accommodation.

10.    At all times relevant to this Complaint, Plaintiff was an "eligible employee" as that term is defined by the FMLA, 29 U.S.C. §2611(2)(a), in that she had been employed by Defendant for at least twelve (12) months and for at least 1,250 hours of service during the 12 months prior to the exercise of her rights under the FMLA and/or her eligibility to exercise her rights under the FMLA.

**Conditions Precedent**

11.    Plaintiff timely submitted a complaint of discrimination on the basis of her disability to the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC").

12.    Plaintiff received a Final Determination and Right to Sue Notice from the DDOL on February 11, 2025.

13.    Plaintiff received a Notice of Right to Sue from the EEOC on February 18, 2025.

3

14.     Plaintiff has timely filed this Complaint within ninety (90) days of receiving the aforementioned Notice of Right to Sue.

## Statement of Facts

15.     Plaintiff began full-time employment as an employee of Defendant on September 15, 2021, and she continued with Defendant until Defendant terminated Plaintiff's employment on or about November 2, 2023.

16.     Plaintiff was employed as a Referral Center Assistant at the time of her termination.

17.     Prior to her termination, Plaintiff was qualified for her job position and satisfactorily performed all duties of her position.

18.     On December 15, 2022, Plaintiff experienced a medical issue, specifically emergency gall bladder surgery, that kept her out of work from December 15, 2022, through January 10, 2023.

19.     The gall bladder surgery resulted in a condition wherein Plaintiff required frequent restroom breaks.

20.     In or about May 2023, Plaintiff's supervisor, Stephanie Passwater ("Passwater"), demanded that Plaintiff use FMLA or produce a doctor's note stating she needed to use the restroom in the mornings.

21.    On or about June 6, 2023, Plaintiff provided a doctor's note to Human Resources indicating a need for frequent restroom breaks due to a medical condition, but Human Resources stated the doctor's note was not necessary.

22.    Passwater continued to complain about Plaintiff using the bathroom through June, July, and August.

23.    On August 30, 2023, Plaintiff received a written warning from Passwater for frequent tardiness. Plaintiff refused to sign the written warning and provided a written response denying the allegations made by Passwater.

24.    Throughout September, October, and November, Plaintiff was harassed by Passwater each time she requested time off for doctor's appointments.

25.    Passwater would not grant time off unless Plaintiff said "please."

26.    Passwater and another management employee, Money (last name unknown), would constantly make belittling remarks to Plaintiff about her doctor's appointments and the manner in which she requested time off.

27.    On or about October 15, 2023, Plaintiff made the decision to seek other employment and applied to Bayhealth Medical Center.

28.    Bayhealth Medical Center interviewed Plaintiff on October 30, 2023. Plaintiff felt the interview went well, and the interviewer for Bayhealth stated Human Resources would be in touch and that they looked forward to working with Plaintiff.

29.    On November 2, 2023, Defendant terminated Plaintiff's employment with no reason provided.

30.    On November 8, 2023, Bayhealth Human Resources informed Plaintiff that her references had been checked and that they would next check her previous work history to determine how much they would pay Plaintiff when they offered the position.

31.    On November 21, 2023, Bayhealth Human Resources called Plaintiff to inform her that they had received an "adverse response" from Delaware Hospice and could no longer offer her a position.

32.    The foregoing events caused Plaintiff to fall into an extreme depression.

33.    Plaintiff began seeing a therapist and continues to see a therapist to help cope with mental health issues directly related to the abusive behavior of Defendant.

34.    Defendant's termination of Plaintiff's employment was an act of discrimination and retaliation against Plaintiff for pursuing her rights under the ADA and her rights under the FMLA.

35.    Defendant is liable for the actions of its agents and employees as set forth in this Complaint under the principles of agency and the doctrine of *respondeat superior* and pursuant to the Defendant's ratification of its agents' and employees' wrongful actions.

36.    The wrongful acts committed by Defendant, acting by and through its agents and employees, as stated hereinabove, were willful, wanton, and committed in bad faith.

37.    As a direct result of the actions of Defendant, Plaintiff has suffered damages, including, but not limited to, severe emotional distress, pain and suffering, mental anguish, humiliation, and lost wages.

## COUNT I – AMERICANS WITH DISABILITIES ACT

38.    Plaintiff restates and hereby incorporates by reference paragraphs 1 through 37 hereinabove.

39.    Plaintiff informed Defendant that she had a disability and that the disability required frequent restroom breaks.

40.    Plaintiff supplied a note referencing her disability to Defendant's human resources department.

41.    Defendant failed to engage in an interactive process to determine what types of accommodation would be available.

42.    Defendant failed to accommodate Plaintiff's disability, instead opting to discipline Plaintiff for using the restroom in the morning and eventually terminating her employment.

43.    By committing the aforementioned acts, specifically by failing to enter into an interactive process and failing to accommodate Plaintiff's disability,

Defendant discriminated against Plaintiff in violation of the ADA, 42 U.S.C. § 12101 *et seq.*

44.    By committing the aforementioned acts, specifically by terminating Plaintiff's employment, Defendant retaliated against Plaintiff on the basis of her disability in violation of the ADA, 42 U.S.C. § 12101 *et seq.*

45.    As a direct result of the discriminatory and wrongful conduct of Defendant, Plaintiff has suffered damages, including, but not limited to, severe emotional distress, pain and suffering, mental anguish, humiliation, and lost wages.

WHEREFORE, Plaintiff demands judgment against the Defendant for:

a) back pay, including interest;

b) reinstatement, if feasible, or in the alternative, front pay;

c) compensatory damages, including damages for emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary damages;

d) punitive damages;

e) pre-judgment and post-judgment interest;

f) attorney's fees; and

g) any other relief that this Court deems just.

## COUNT II - DPDEPA

46.    Plaintiff hereby restates and incorporates by reference paragraphs 1 through 45 hereinabove.

47.    Plaintiff informed Defendant that she had a disability and that the disability required frequent restroom breaks.

48.    Plaintiff supplied a note referencing her disability to Defendant's human resources department.

49.    Defendant failed to engage in an interactive process to determine what types of accommodation would be available.

50.    Defendant failed to accommodate Plaintiff's disability, instead opting to discipline Plaintiff for using the restroom in the morning and eventually terminating her employment.

51.    By committing the aforementioned acts, specifically by failing to enter into an interactive process and failing to accommodate Plaintiff's disability, Defendant discriminated against Plaintiff in violation of the Delaware Persons with Disabilities Employment Protections Act ("DPDEPA"), 19 *Del. C.* § 720 *et seq.*

52.    By committing the aforementioned acts, specifically by terminating Plaintiff's employment, Defendant retaliated against Plaintiff on the basis of her disability in violation of the Delaware Persons with Disabilities Employment Protections Act ("DPDEPA"), 19 *Del. C.* § 720 *et seq.*

9

53.     As a direct result of the discriminatory and wrongful conduct of Defendant, Plaintiff has suffered damages, including, but not limited to, severe emotional distress, pain and suffering, mental anguish, humiliation, and lost wages.

WHEREFORE, Plaintiff demands judgment against the Defendant for:

a) back pay, including interest;

b) reinstatement, if feasible, or in the alternative, front pay;

c) compensatory damages, including damages for emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary damages;

d) punitive damages;

e) pre-judgment and post-judgment interest;

f) attorney's fees; and

g) any other relief that this Court deems just.

## COUNT III – FMLA

54.     Plaintiff hereby restates and incorporates by reference paragraphs 1 through 53 hereinabove.

55.     In or about May 2023, Passwater demanded that Plaintiff use FMLA or produce a doctor's note stating she needed to use the restroom in the mornings.

56.     On or about June 6, 2023, Plaintiff provided a doctor's note to Defendant's human resources department indicating a need for frequent restroom

breaks due to a medical condition, but Human Resources stated the doctor's note was not necessary.

57.    Despite receiving documentation of a serious medical condition that required frequent restroom breaks, Defendant's human resources department failed to provide Plaintiff with a notice of eligibility and responsibilities.

58.    By terminating Plaintiff, Defendant intentionally and willfully retaliated against Plaintiff for the exercise of Plaintiff's rights under the FMLA and/or intentionally and willfully interfered with Plaintiff's rights under the FMLA, in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*.

59.    As a direct result of Defendant's discriminatory interference and/or retaliatory conduct, Plaintiff has suffered damages, including, but not limited to, lost wages.

WHEREFORE, Plaintiff demands judgment against Defendant for:

(a)    any and all damages provided pursuant to 29 U.S.C. §2617(a)(1), including but not limited to lost wages, salary, employment benefits, back pay, front pay, interest, liquidated damages, and any and all other available pecuniary damages;

(b)    pre-judgment and post-judgment interest;

(c)    attorney's fees and costs;

(d)    Reinstatement, if feasible, or in the alternative, front pay; and

(e)     any other relief, whether legal or equitable, that this Court deems just.

## COUNT IV – DEFAMATION

60.     Plaintiff hereby restates and incorporates by reference paragraphs 1 through 59 hereinabove.

61.     After making the decision to seek other employment, Plaintiff applied for a position with Bayhealth Medical Center on October 15, 2023, and was interviewed on October 30, 2023.

62.     Plaintiff was terminated on November 2, 2023, with no reason provided.

63.      Bayhealth Human Resources completed a reference check on November 8, 2023, and informed Plaintiff they would next check her previous work history to determine how much they would pay Plaintiff when they offered the position.

64.     On November 21, 2023, Bayhealth Human Resources called Plaintiff to inform her that they had received an "adverse response" from Delaware Hospice and could no longer offer her a position.

65.     Delaware Hospice's adverse response maligned Plaintiff in her profession.

12

66.    Plaintiff had successfully performed her job, and her employment was terminated with no reason being provided.

67.    The adverse response by Delaware Hospice in response to Bayhealth's inquiry was defamatory per se as it injured Plaintiff's reputation in her trade or business.

68.    The adverse response by Delaware Hospice in response to Bayhealth's inquiry was defamatory in nature as it tended to injure Plaintiff's reputation; it was published in that the information was communicated to Bayhealth Medical Center; the communication referred to Plaintiff; Bayhealth Medical Center understood the communication to be defamatory in that the communication was adverse to Plaintiff; and the communication caused injury in that Plaintiff was not offered the position with Bayhealth Medical Center.

69.    The adverse response by Delaware Hospice to Bayhealth Medical Center was willful and wanton and made in bad faith.

WHEREFORE, Plaintiff demands judgment against Defendant for:

a) Lost earnings Plaintiff would have earned at Bayhealth Medical Center;

b) compensatory damages, including damages for emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary damages;

c) punitive damages;

d) pre-judgment and post-judgment interest;

e) attorney's fees; and

f) any other relief that this Court deems just.

SCHMITTINGER & RODRIGUEZ, P.A.

By: *Gary E. Junge*_____
      Gary E. Junge, Esq.
      Bar I.D. # 6169
      414 South State Street
      P.O. Box 497
      Dover, Delaware 19903-0497
      (302) 674-0140
      Attorney for Plaintiff

Dated: May 13, 2025